Corning Optical Communications v. Panduit Corp. Corp. 2018, 1903, 05, and 2058. Mr. Wilcox. Thank you, Judge Lurie, and may it please the Court. Jason Wilcox on behalf of Corning. The Board's obvious determinations in these consolidated appeals turn on a number of legal layers, but given the limits of time, I would like to focus on two issues today. The first is the Board's erroneous claim construction of the fiber optic module limitation, which cuts across all three patents. And the second is the Board's error in ruling that Corning could not establish commercial success for the 938 patent. Let me back up to your first point. You say it cuts across all three patents, but I don't see you arguing that it applies to the 148 in light of the additional prior art that's cited there. Well, we do think it applies to the 148 patent because the Board's motivation to combine analysis turned on its belief that the Smirhoff reference disclosed a fiber optic module. It says that in Appendix 35, Appendix 32, and Appendix 33. And we think that under a proper construction, that Smirhoff would not qualify as a fiber optic module because the Smirhoff component is not removable and the Smirhoff component is not fully enclosed. But even if that's true, you've got, as it relates to the 148, you have a totally different reference that seems to satisfy those two requirements, don't you? Well, we do have the Coburn reference, and that reference does seem to satisfy at least the enclosed requirement. But once again, you have the motivation to combine inquiry that's going on. And in that inquiry, the Board's reason for why you would combine Smirhoff with Coburn was, well, both of them disclose fiber optic modules. Now, if the Board's claim construction is wrong about that, then, if the Board's claim construction is wrong, then Smirhoff doesn't disclose a module. And so it'll have to go back and at the very least redo its motivation to combine analysis to determine whether there is actually motivation to combine these two references. But even if the Court has concerns about the 148 patent, for the 226 patent, there's certainly no question that the Board's determination turned on what it means for a fiber optic module. And its determination that, quote, a module is a structure encompassing enclosed or unenclosed fiber optic adapters or connectors. And we think that that is inconsistent with the ordinary meaning of what a module is. We think it's inconsistent with the consistent description and the specification. Every example and every embodiment across all three patents talks about a fiber optic component that is removable and separately installable. Well, I still want to make sure I understand what the claim construction arguments relate to. So it doesn't seem they relate to the 148, even based on the way you do your own briefing. But putting that one aside, the Board specifically found that it does not apply to the 938 either. That, in other words, nothing about what a module is or isn't actually is claimed. So if that's the case, then why does it matter if the module is completely enclosed or removable if it's not part of what is actively claimed? Well, I think that for the 938 patent, the module matters because it is part of what's actively claimed. What the claims say is they say it is at least one guide system configured to receive at least one fiber optic module. So the guide system has to be configured to receive a module. It can't be configured to receive something else. So that limitation is doing work in that patent and is specifying what the guide system has to support. And as this Court has said in cases like BICON and others, you try to give meaning to every word in the claims. And the Board is essentially just reading out the fiber optic module limitation. But you can't have a system that could receive a fiber optic module that's not fully enclosed and yet still be configured to receive a fiber optic module? Well, I think that under the proper claim construction of fiber optic module, no. If it's not configured to receive a fiber optic module that's fully enclosed and is independently removable and installable, then it's not a fiber optic module as claimed in these patents. What do you mean as claimed? Because the claim doesn't say that. Well, the claim doesn't explicitly say that it has to be fully enclosed or it has to be independently installable and removable. It doesn't say any of that, does it? It doesn't say that explicitly. But for fiber optic module... So why do you say it? Thank you, Judge Plager. I think that starting with the removability requirement, I think that that flows from the ordinary meaning of what a module is. What makes a module modular is it is separately removable and installable. It's a separate component. Always, in every situation, every module has to meet that standard that you just articulated. You couldn't have a module in any capacity anywhere in the world that doesn't meet that standard. Is that what you're telling us? Well, I don't think I have to go that broad, Judge Plager. I do think that's the ordinary meaning, but I don't think I have to go that broad because if you look at the specification in these patents and what a person of ordinary skill in the art would understand once they've read this specification, they would understand that any module that practices this invention does have to meet those requirements. You want us to read that requirement in from the written description. Is that what you're saying? So I don't want you to read it in from the written description. I want you to do like what this court did in Pride Mobility and in Vernetics and in Erdetto, where it looked at the specification and it said every example and every embodiment in the specification has this requirement. That's a consistent description in the specification. And then it said there's no counterexamples in the specification. And this court concluded from that consistent usage that that is what the claims require. What I don't understand is if you thought this requirement was so important to the 938, why didn't you ask for claim construction as to that term for the 938? Well, I think we did ask for claim construction on that term for the 938. We had a heading in our patent owner response. It was called claim construction. But the only argument was as to the 226 or to the other one, right? In front of the board? Yeah. So in front of the board at Appendix 4464, we asked the board to construe fiber optic module. And we said that the patent uses the term fiber optic module to describe a modular cassette within a housing and components that are disposed through the walls and extend into the interior of the housing. We had an entire claim construction argument on this. We gave the board a definition. The board decided that it wasn't a limitation of the claims, which we think is erroneous. But it isn't that we didn't present the issue to the board. And the same is true for the other two patents. At Appendix 813, we offer our construction for the 148 patent. And at Appendix 8148, we offer our construction for the 226 patents. And so we've talked a little bit about movable and installable. I'd also like to talk about the fully enclosed requirement, because I think those are two separate requirements. And if I win on either one, that gets me at least a remand to the board on all three patents. So for the fully enclosed requirement, once again, you have 50 figures in the specification across these three patents. And they're different specifications that show it in every instance is fully enclosed. And that's not a coincidence, Your Honor. If you look at Column 2, Lines 6 through 10 of the 148 patent and Columns 2, Lines 7 through 10 of the 226 patent, they talk about how one of the advantages of the invention is it makes it easier to route the connectors and the jumpers through the equipment. Well, Panduit itself has admitted that fully enclosed modules are what make that possible. In the 148 patent IPR, for example, it told the board that the reason a skilled artisan would have fully encased smear hoss panel sections was to reduce clutter. And that's exactly why all of the modules here need to be fully enclosed, to provide that neat routing and organization that the patent talks about as one of its advantages. And you can also see that in the prosecution history in Appendix 1244. There in the prosecution history, the board is talking about how, or we talk with the examiner about how it is inherent in a fiber optic module that it's enclosed. And the examiner... But didn't you admit during that prosecution that just two walls would be enough? So in front of the... So not during that prosecution, but there was an exchange in front of the board where there was a question about, well, housing. What exactly does it take to be a housing? And we did say that at least in the abstract, the housing could have maybe only two walls or maybe just three, that it didn't necessarily have to be fully enclosed. So under BRI, where do we get fully enclosed? Well, I think that number one, what we were saying at that statement was just in the abstract, not in the context of the specification of these patents. So what I think is you get it from the specification of the patents. But if you think that the broadest reasonable interpretation of a module that only has two walls, that is still enough to reverse the board here because there's no dispute that the Smearhaw reference does not have those two walls. Panduit itself and its own expert told the board that Smearhaw uses open connections and that there's not an enclosure of any kind. Well, where in the spec do you get the language for the fully enclosed? So I think the two places you look in the specification, and I'll be frank up front that neither of them use the exact word fully enclosed, are number one, you look at all the figures and the consistent usage, which this court has done in the past to look at, and to say, well, that must be, you know, when there's all these consistent examples, that's a strong indication that the claims don't cover something that does not have that property. And then I think that you look at column two, line six through 10 of the 148 patent, and there's the exact same language at column two, line seven through 10 of the 148 patent, where the patent says that one of the advantages of the invention is to provide neat routing and organization of jumper connections. And the way that you get that is through this fully enclosed structure. Mr. Wilcox, I may have missed it, but just help me to be sure. I couldn't find in the 148, the 938, or the 226 patents any specific written definition of this term. Am I correct? That is nowhere in those patents. Is there a specific definition by the patentee? I completely agree, Judge Plager. There is no specific definition in the specification of these terms. I just wanted to be sure. That is exactly right, but as this court has said in the cases that I won't repeat to you again, that doesn't have to be an explicit definition in the patent. You need to look at the specification and understand what is being claimed by the description that is in the specification. If the court doesn't have any other questions about claim construction, I do want to turn just really briefly to the secondary considerations analysis. When we get to the secondary considerations analysis, the board just wrote off the commercial success evidence that Corning presented is relatively weak. Based on a sole factor test, that this court has rejected in cases like Continental CAN, PPC Broadband, Polaris, WBIP. It didn't walk through any of the evidence. It just said, well, your witnesses admit that the commercial success was partially responsible to this feature, or that it wasn't based just solely on this feature, and so that's enough to discount your evidence of commercial success. This court has consistently told the board that's not the proper analysis, and has remanded to the board to do the proper analysis, and it should do so again here, where the evidence is clear that the primary driving feature of this product, the reason the customers were clamoring for it, was because of the patented technology. That's undisputed evidence from our witnesses at places like Appendix 6876 to 77, and Appendix 6858 to 18. Well, isn't that part of the problem, is what is exactly the overall technology? I mean, the whole edge system is broader than just these drawers, right? So it is broader than just the specific system that is claimed in this patent, but if you look at Appendix 6876 to 77, our witness walks through that and says that it is the patented features that help drive the functionality. You know, he says that, you know, the massive spike in sales rejects all the customers' demand for the increased efficiency stemming from the system of independently removable and installable drawers that can be removed and installed from the rear. I see I'm into my rebuttal time, so if there's no further questions, I will save my time for rebuttal. Thank you.  Mr. Malinder. Good morning. Good morning. Good morning, Your Honors. May it please the Court. I thought first we should talk about claim construction, and Judge O'Malley, you raised some issues relating to waiver, and the issue, the problem here is that there have been so many different claim constructions or variants of claim constructions in the record that it's actually sometimes hard to understand what is being argued by Corning and what isn't being argued. But one thing we know from their opening brief is that they did not argue that claim construction impacts the 148 patent. So that patent is off the table. They mentioned the 226. They mentioned the 938. And if you look at Section 1B of their opening brief, then they try to resuscitate that in their reply brief, and that's too late. So that one is off the table. With respect to the issue of fully enclosed, as my opposing counsel conceded, they've really never argued this fully enclosed. They've argued various variants of enclosed or housing or other things, but never fully enclosed. And in fact, the Board really kind of called them out on that at the oral hearing in the 226, and that's at 8253 to 544, that, well, how many walls is enough? And then they said, well, at least two walls. So there have been all sorts of different... Because that relates to whether it's removable, right? That has to do with the enclosed issue. I understand that, but part of the reason they're arguing it has to be at least partially enclosed is so that they can remove it. Well, so that they can avoid... Or one can remove it. So that they can avoid smarha. Because they argue that smarha... I understand that that was the point. I'm sorry, I'm sorry. That's the point for the legal strategy. What I'm saying is that in the patent, I mean, because I do have a hard time with your removable argument, because when it says it can be removed if desired, that doesn't say making it removable is optional, because if it wasn't removable, you couldn't remove it if you desired to remove it. So does the point that there has to be some form of housing, some form of housing, go hand-in-hand with the question of whether it's removable? I don't necessarily believe that that's so, Your Honor, and maybe I can get to that in just a second. If I can just finish the waiver point, I'll come right back to the removability issue. The other issue is that removability was not even argued with respect to the 148 and the 938 either. I just wanted to put that out there for the Court. That came up later in the 226. So that's what I was trying to pin down. I get your argument on the 148. So let's move on. So then you say claim construction doesn't matter for any of these patents. So why specifically do you say it does not matter for the 938? Well, with respect to the 938, first of all, they never argued a claim construction. So first of all, they never argued it. Well, he just cited me to a place in the record where it seems like they did ask for it. Well, the board determined that they didn't. No, the board said it wasn't necessary. They didn't say you didn't ask for it. Well, they said that maybe we can go to the record there for the 938 patent. Let's go to 864. Several times the board said it didn't seem to them that it was necessary that they give a specific definition of the term. I'm sorry, Your Honor. Could you repeat that, please? Keep doing what you were doing. No, go ahead. It just says, patent owner contends that claim one requires a fiber optic module. Patent owner's incorrect. And then he cited me to the portion of the record where they actually asked for a construction or proposed a construction for fiber optic module for the 938. So there at least was a request or a proposal, but the board said it's not necessary because we don't think it's claimed. So, I mean, we ought to all at least be on the same page of why you think it doesn't matter. Let's go to 4464 in the appendix. Why don't you take our word for that? Yeah, I just read it to you. OK, Your Honor. Take our word for it. OK, I'll take your word for it. It's a good idea. Sure. It just says it doesn't positively recite it, so therefore we don't need to construe it. That's correct, Your Honor. And in fact, that's the case with respect to both the 938 and the 226 is that this term is not being positively recited. It's part of a clause. For example, such as a tray configured to receive a fiber optic module. So in a case like that, the fiber optic module isn't positively recited. The tray is. And so that limitation isn't doing work. And that's what the board was getting at. And that's why it was citing that case law relating to positive limitations. The same exact reasoning also applies to the 226 with respect to the language in that particular passage. Yeah, so let's look at that. Because the 226, it's a lot more, the claims there have a lot more to them. So tell me why the claim construction does not relate to the 226. So if we go to the 226. Claim 32. OK, claim 32. It says, providing access to a fiber optic module and then comprising. So first of all, the board found that the preamble is not limiting. And I don't believe that's been contested. So then the next limitation relates again with fiber optic module. It says, imparting a force on a fiber optic equipment tray supporting one or more fiber optic modules. So again, it's the same type of situation, which is that the tray is being positively recited but not the actual fiber optic module. So we sort of fall into that same situation, which is like the tray configured to receive. It's not that term that's doing the work. It's the tray that's doing the work. And so there's no basis for them to then construe that particular term as they've demanded. It just requires a module. But is there anything in SMIRA that shows that there is anything that's even, that could fit into the trays? That could fit into the trays? I mean, in other words, if what you're saying is you need a tray configured to accept a fiber optic module and then you describe how that tray works, is there anything in SMIRA that would satisfy those requirements? Well, what we have in SMIRAHA is we have a fiber optic module. And so, frankly, under either construction we win because what we have in SMIRAHA is a fiber optic module that is removable. And the way we know that is because in Figure 7 it's depicted independently. So that can slide in. And we can also remove it with very little force because the patent talks about how flexible that is. With respect to the fully enclosed limitation that they want to import, if you look at A536-37, what Dr. DeCussetta showed was that he drew a red line around Figure 9 and showed how there is an inside, which also satisfies that fully enclosed as they read it. So really under either construction, it just doesn't matter. So we have positive limitation. You can check off those two patents as not mattering. And then you can also check them off because we win under even their construction. So why, if it was so unimportant to the Board, did they bother to construe the term? So I think what they were trying to get across is that there just isn't a basis for them to be arguing to import these claim limitations. And I'd like to get to both of your questions to my opposing counsel on that point. So first of all, I think we can all agree that there's no trace of this term of either fully enclosed or removable in the claims. We can all agree on that. But isn't the whole point of this invention that you will have a module that can be easily removed? Isn't that the whole point? Take it off the tray? Well, I don't believe that's the whole point, Your Honor. And in fact, I'd like to go to the 938 patent. The language I'd like to direct you to is that... I mean, I hate to go back to something as basic as the invention that's being claimed. But if you look at it, it looks to me like, yeah, the point is you want to be able to remove these modules. Understood, Your Honor. But we have a definition in the spec. This is where I'd like to challenge my opposing counsel on this point. In column 5, we look at the 938, identical language in the 148. It says that fiber optic modules should be construed... What line? Oh, this is line 32. I'm sorry, 52. And it says the fiber optic modules can be fiber optic adapter modules or any other type of fiber optic modules or fiber optic apparatuses, including those that support fiber optic connections. So that is a very broad way of looking at what a fiber optic module is. I think technically the board position seems to be supportable as a technical matter. But its position seems to be sort of irrelevant to what's being claimed as an invention. Now, unfortunately, they didn't claim it. And unfortunately, they didn't define it. But nevertheless, it looks to me like removability is somewhere in that whole concept, isn't it? Well, I think it was intentional that they didn't claim it because they wanted to have very broad claims. And now they're backtracking and saying, Oh, wait a second. We've got bang-on pieces of prior art and we want to get around them. And so I think that's really what the issue is. They wanted to claim this very broadly. Otherwise, they wouldn't have put this sentence in column 5 in the patent. And I should also say that the examiner here during prosecution of the 148 patent also discusses this. So I'm just going to read you a quote. This is from A1319 through 1320 where the examiner addresses this issue. And what the examiner said is that the broadest reasonable interpretation, which is what we apply here in this case, would include the dictionary definition for a module, which is defined by the Merriam-Webster's Dictionary, is, quote, any in a series of standardized units for use together. That's what the examiner said. That BRI and the dictionary do not equate. It's got to be reasonable within the bounds of the spec. Agreed, Your Honor. What the invention is. And we just saw in the specification in column 5 that the patent is defining a module very broadly, just as the examiner did under the broadest reasonable interpretation, which is exactly what the board applied here. The board was not going to limit these claims. And to the extent there's any doubt about this, we have to remember that we are controlled by BRI here. And so if there's any doubt on this point, we should apply that standard. And we do have a reasonable basis for doing that, as did the board, which is the support here in the specification, the claims themselves, which we also have to look at because we're not supposed to be importing limitations into the spec, and then thirdly, the prosecution history. So we have three different types of intrinsic evidence that amply support what the board did, which was not read these limitations into the claims. Okay, before you're done, let's talk about the objective indicia. I mean, there certainly was some language in the board opinion that has to give you pause, like, well, it's okay because the obviousness was strong, so therefore we can just discount this. That seems like doing exactly what we've said repeatedly you're not supposed to do. So maybe we could just look at the board's opinion just for a second. We can walk through it. So in the opening pages of the board's decision relating to secondary considerations, and I'm around A67, first the board talks about how important secondary considerations are. So it did not give this short script. It followed this court's guidance on how important they are. For example, the court says on the bottom of A67, objective evidence of non-obviousness plays an important role as a guard against the statutorily prescribed hindsight reasoning in the obviousness analysis. And then they cite several cases about how it must always, when present, be considered, etc. So the board was fully aware of the importance of this. So then if we turn to what the board actually did with respect to commercial success, so the first thing it did on the bottom of page 68 was it said that the patent owner has established a presumption of nexus. And the reason is because they showed that the features in the Edge product embodied the claimed invention. Right, and then it goes on to say that the petitioner offered nothing to rebut that, and then it still turns around and essentially says, but it's rebutted anyway. Right, and so I think what the board could have said with a little more clarity here was that we didn't rebut the fact that, yes, they did the exercise of checking off each claim limitation and finding it in the Edge product. That we did not rebut. So that's what the board is referring to here. Because later, we certainly did present rebuttal evidence on the issue of commercial success. And in fact, I'll give you the appendixes, A4648 through A4650. And one of the pieces of evidence which we presented to rebut that presumption of nexus was Corning employee Mr. Kelly's testimony that the claimed features were only partially responsible for the commercial success. But haven't we said expressly that it doesn't have to be the sole factor? 100%, Your Honor. But it doesn't have to be the sole factor. But you can take into account the fact that if it's only partially responsible, that may diminish its weight. And that's what the board did here. But didn't the board expressly say that we give it very little weight because it's not the sole factor? And it was entitled to do that because Mr. Kelly said there were at least 10 reasons why this device was commercially successful. That's from his deposition testimony. So he said that. The board said we accord the arguments regarding copying some weight. But they give little weight to industry praise. So they gave some weight. Well, Judge Lurie, if you turn to A70 on commercial success, it says, for this reason, we do not accord substantial weight to patent owner's commercial success evidence. And that was because Mr. Kelly testified, well, they're one of many factors here beyond the claimed features. They expressly said we're not giving up substantial weight because it's not the sole reason. But we've repeatedly said it doesn't have to be the sole reason. It didn't say it was because. So what Continental CAN said was, you can't disregard completely evidence of commercial success just because it's partially responsible for the commercial success, those claimed features. That's what the board, what the board here did, was completely consistent with Continental CAN. It didn't throw that evidence out the window. It just said it isn't entitled to much weight. That's a big difference because Continental CAN says do not disregard evidence of commercial success even when the claimed features are only partially responsible for the success. You can't just completely disregard it. And that's exactly what the board did here, was not completely disregard it. It took it into account and said it wasn't worth much. And then later it said, it looked at all of the secondary considerations and concluded, look, you've got a very weak case of secondary considerations. You've got a very strong case of obviousness. I'm going to weigh those two and look at that. And it compelled the conclusion that the claims would have been unpatentable as obvious. Thank you, counsel. As you see, your red light is on. Mr. Wilcox. Thank you, Judge Lurie. I'd like to start to make two quick points about waiver and then I'll move on to talk about removability and secondary considerations. On the 1-4-8 patent and whether we ever raised that in our opening brief, if you look at page 33 of our opening brief, we say that claims 32 through 36 of the 2-2-6 patent and every challenge claim of the 9-3-8 and 1-4-8 patent all require a fiber optic module and then immediately start talking about why the board erred and walked through our claim construction. So we were arguing about the 1-4-8 from the outset. What we weren't arguing in our opening brief and what we're not arguing now is that that entitles us to an outright reversal for the 1-4-8 patent. We said that gets us at most a remand for that patent, unlike the 2-2-6 and 9-3-8 where we think if you agree with our claim construction, that gets us an outright reversal and there's no reason to remand. On the fully enclosed point, I direct the court to appendix 82-36 where Panduit itself acknowledged that our claim construction, quote, necessarily requires an enclosed housing. So everyone understood below we were arguing about an enclosed housing. Turning to removability, I think you're exactly right, Judge O'Malley, that you need to look at what the specification is saying and that the broadest reasonable interpretation standard expressly takes that into account. That's what this court has said in cases like Henry Smith and power integrations, that the broadest reasonable interpretation is not just the broadest possible interpretation, but the broadest reasonable interpretation in light of the specification. Now, there was also some language from column five that my colleague on the other side discussed and said that it was definitional language that undercut us. But if you look at the next two sentences below that and we're looking at column five, roughly lines 52 to 61, it says, right after the language he quoted, that both the fiber optic modules and the equipment trays are rear installable. And then in the very next sentence says, both the equipment trays and the fiber optic module supported therein are independently translatable about the chassis for installation, access, and removal. And or removal. Yeah, it was and or removal. I said and removal. I apologize, Your Honor. So as soon as it goes to what he's calling definitional language, it immediately turns around and says, but don't lose sight. It's gotta be independently removable and installable. That's what we mean by fiber optic module. Turning to secondary considerations, what the board did here is exactly what this court has reversed in cases like WBIP and Polaris and PPC Broadband. Judge Lurie, to your point about the language they used, the board used very similar language in those three cases. And this court still said that it needed to be remanded and it needed to do the proper analysis and show that it was actually considering our secondary considerations and not just writing it off because of a belief that it had to be the sole factor. And the evidence wasn't rebutted here. Now I think that you have to remand anyway because the board didn't engage  about these factual findings. That's part of the problem. So under the APA, you're missing the reasoned decision making. But if you look at Appendix 68, 76 to 77, our vice president talks about how the massive spike in sales was due to that. He talks about how it was the primary selling point. We have Appendix 59, 69 where customers were, quote, clamoring for the technology. This is not a case where the evidence was given little weight and the board properly looked at it and said, oh, well, a host of factors were out there and we can tell that all these other things won't really matter, not the patented technology. Counsel, as you can see, your red light is on. So thank you. Thank you, Judge Boyd. The case will be submitted. And we have the same parties in the next case and I would like you to switch so we are in the proper position.